UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-11553-JLT

_____
                                          )
DARRIEN GOETZENDANNER,      )
    Petitioner                         )
                                          )
v.                                        )
                                          )
LUIS SPENCER,                       )
    Respondent                       )
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S PETITION FOR FEDERAL HABEAS CORPUS RELIEF AND OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

### FACTS

On March 20, 1992, the Petitioner, Darrien Goetzendanner ("Mr. Goetzendanner"), was indicted on indictment numbers 92-0378 through 84 and 92-0668 at Berkshire County Superior Court. On March 26, 1992, Mr. Goetzendanner was arraigned in superior court and ordered to be held in lieu of bail in the amount of five thousand dollars (5,000.00) cash or surety. See docket sheets attached as EXHIBIT A. Mr. Goetzendanner was never able to post the bail amount, and so remained in prison as he awaited trial on the indictments. The indictments arose from conduct that took place while Mr. Goetzendanner was on parole. See parole violation warrant attached as EXHIBIT B. Five (5) days after his arraignment, the parole board issued a parole violation warrant. The day after the warrant was issued, Mr. Goetzendanner ceased serving the underlying sentence for which he was receiving parole.

The warrant indicates that on the same date of issuance, March 31, 1992, law enforcement attempted to serve it upon Mr. Goetzendanner. For reasons discussed *infra* they were unable lawfully to do so. Instead, the warrant remained as a detainer, running behind the

bail imposed by the superior court.  The warrant purports to be served on the date that Mr.
Goetzendanner was sentenced on the above entitled indictments, February 5, 1993.

The warrant was not served prior to sentencing.  It was purportedly served by Stephanie
Weimer, an institutional parole officer assigned to MCI Cedar Junction, once Mr. Goetzendanner
was returned to Cedar Junction after sentencing.  See EXHIBIT B. Although Mr. Goetzendanner
was not served with the parole warrant prior to sentencing on February 5, 1993; therefore not
serving the parole violation sentence, the Judge ordered that Mr. Goetzendanner serve his
February 5, 1993, sentence "from and after the expiration of all previous sentences which you
have been ordered to serve."  See copy of trial transcript Vol 5, pg 95 attached as EXHIBIT C.
Mr. Goetzendanner was credited with three hundred twenty (320) days of time served on the
February 5, 1993, sentence. EXHIBIT A. Judge Velis of the Berkshire County Superior Court, in
a Memorandum of Decision and Order issued October 9, 2001, and entered October 11, 2001,
recognized that Mr. Goetzendanner was not serving a sentence at the time he was ordered to
serve his February 5, 1993, sentence from and after.  See Memorandum of Decision and Order
attached as EXHIBIT D. On page seven (7) of his decision, Judge Velis stated, "At that time
[February 5, 1993, sentencing] the defendant [Mr. Goetzendanner] was not serving any other
sentence, and the concurrent sentences began to run...The defendant, therefore, will not
commence serving his parole violation sentence until the expiration of the concurrent sentences
he is presently serving."  See EXHIBIT D, pg. 7.

Although Mr. Goetzendanner was not serving any other sentence and could not be
compelled to serve his parole violation sentence first and his February 5, 1993, sentence second,
the department of corrections compelled Mr. Goetzendanner to do just that.  He went to Cedar
Junction following sentencing on February 5th and was treated as serving his parole violation
sentence first.  In fact, on February 1, 1997, he was discharged from the parole violation sentence
to begin serving the February 5, 1993, sentence.  See copy of discharge attached as EXHIBIT E.

Had the sentence been properly imposed, Mr. Goetzendanner would first have completed
the sentence imposed on the 1993 conviction followed by the remainder left owed on the parole

violation.  As it stands now, he is being unlawfully held in custody.

Also, at sentencing, attorneys for both the commonwealth and Mr. Goetzendanner were not entirely on top of Mr. Goetzendanner's parole status.  Mr. Goetzendanner's parole running records, beginning with dated entries of March 10, 1992,  reveal that meetings were held among and between his parole officer, probation, the house of correction, and the district attorney to discuss among other matters, withdrawing his bail to hold him on the parole violation warrant. Running Records attached as EXHIBIT F. The running records reveal, quite correctly, that Mr. Goetzendanner's bail was never withdrawn on the 1992 charges.  EXHIBIT F, entry 10/30/92, 11/3/92. Despite this understanding of the commonwealth, when the sentencing judge ordered that Mr. Goetzendanner do his time from and after the parole violation sentence, the commonwealth remained conspicuously quiet in failing to tell the court of Mr. Goetzendanner's parole status. Moreover, defense trial counsel took no steps to correct the implicit incorrect assumptions the judge made in issuing the sentence, that Mr. Goetzendanner was presently in custody on the parole violation sentence.

Because Mr. Goetzendanner is currently in custody illegally in depravation of state and federal constitutional rights for reasons unrelated to trial issues, he seeks release pursuant to this petition for habeas corpus.

## STATEMENT OF PROCEEDINGS

After diligent pursuit, on August 26, 2002, the Petitioner was provided with a certificate of discharge from the parole sentence, C-49446. The certificate indicates that Mr. Goetzendanner was discharged from his parole sentence on February 1, 1997.  The certificate of discharge is the factual predicate for this federal petition in that it evidences that Mr. Goetzendanner was compelled to serve his intervening sentence on and after the parole violation sentence despite the fact that it violates the law.

On May 9, 2003, less than nine (9) months after discovery of the certificate of discharge, Mr. Goetzendanner filed a Writ of Habeas Corpus in Norfolk County Superior Court.  On June 3, 2003, the case was entered and docketed.  The Honorable John C. Cratsley, Associate Justice of the Superior Court, ordered a hearing for June 27, 2003, and a return to be filed no later than June 19, 2003. Order attached as EXHIBIT G.

On June 27, 2003, eight (8) days past the court ordered June 19th date, the Respondent filed a late return, a motion to dismiss or for summary judgment, and a motion for enlargement of time to July 11, 2003, to file a supporting memorandum. Superior Court Docket Sheet attached as EXHIBIT H. No hearing was held on June 27, 2003.

June 27th came and went without a hearing as previously ordered.  Norfolk Superior Court did not have a judge available to hear the matter.  On July 23, 2003, a motion to strike the Respondent's overdue memorandum of law was filed by the Petitioner because of respondent's failure to fie the memorandum by the promised filing deadline.

On July 29, 2003, the Respondent filed a second request for an extension and filed a memorandum supporting its motion to dismiss on the same day. On July 31, 2003, the Petitioner filed an opposition to the second motion to enlarge time and moved that the second motion for enlargement of time be denied, the opportunity to file a memorandum be waived, the respondent's memorandum be stricken, and the petitioner be immediately released. On August 6, 2003, the respondent's second motion for enlargement of time was allowed.

On May 28, 2004,  the Honorable Paul A. Chernoff, Associate Justice of the Superior Court, allowed the respondent's motion to dismiss the petition for Writ of Habeas Corpus without oral argument contrary to the prior June 3, 2003, ruling which ordered a hearing. See copy of order attached as EXHIBIT I. The entry of dismissal judgment was stayed thirty (30)

days. EXHIBIT I.  On June 3, 2004, the Petitioner hand delivered a correspondence to the Superior Court explaining the posture of the case and requesting a hearing as had been ordered on June 3, 2003.  EXHIBIT J.  A courtesy copy of the correspondence was sent to Justice Chernoff who allowed the motion to dismiss without a hearing but stayed entry of judgment. EXHIBIT K.

The petitioner next filed a 12(c) motion for judgment on the pleadings on June 14, 2004, which was accompanied by a request for a prompt hearing date of June 30, 2004. EXHIBIT H. Although the court received the motion, the court did not mark the motion for hearing.  Instead, on June 24, 2004, Justice Chernoff ordered that a hearing would be scheduled to address whether or not the May 28th dismissal should be vacated and whether or not Mr. Goetzendanner was entitled to a hearing on the merits in accordance with the June 3, 2003 order. EXHIBIT L. However, no hearing was scheduled by the court.

Because no hearing was scheduled the Petitioner wrote to the court on August 31, 2004, and requested an October 12, 2004, hearing date.  EXHIBIT M.  The petitioner further requested that he be present for the hearing.  On October 7th the petitioner was advised via telephone that the October 12th requested hearing date would not occur. Counsel for the petitioner went personally to the civil clerk's office on October 12th to address the court's failure to schedule a hearing.  Despite the in person conference, no hearing date was scheduled.  On October 21, 2004, the petitioner wrote the Superior Court and advised that if a prompt hearing date would not be scheduled for October 29th, that Petitioner would explore alternative means of having the matter heard.  EXHIBIT N. On October 26, 2004, Mr. Goetzendanner's counsel had a telephone conference with the Superior Court.  The court advised that October 29th was not an available date but that one would be assigned.

The court marked December 3, 2004, as a hearing date and the Petitioner would be physically present for the hearing.  EXHIBIT O. The hearing was held as scheduled in Norfolk Superior Court before the Honorable Wendie I. Gershengorn.  After hearing, the court ruled that Jude Chernoff was the appropriate Judge to hear the matter.  She took no action and referred the matter back to him. The clerk's office advised that Judge Chernoff would be sitting in Norfolk Superior Court on December 20, 2004, and would review the papers to determine whether or not he would hold a hearing.  EXHIBIT P. On December 6, 2004, the Petitioner wrote to Judge Chernoff stressing the importance of his petition and requesting a hearing.  EXHIBIT Q.  The Petitioner also requested to be present on December 20th when the file was to be reviewed. EXHIBIT R.

Judge Chernoff did not sit in Norfolk Superior Court on December 20, 2004.  As of March 2, 2005, the Superior Court had taken no further action.  The petitioner was compelled to file pursuant to Mass. Gen. L. ch. 211, §3 a petition to the Single Justice of the Supreme Judicial Court for Suffolk County seeking an order in the nature of mandamus compelling the Superior Court to conduct a meaningful hearing on the merits of the Petitioner's Writ of Habeas Corpus. EXHIBIT S.

On April 12, 2005, Judge Chernoff in a written memorandum indicated that he would conduct an on the record conference with counsel on July 11, 2005, to determine whether or not a hearing on the merits would be entertained.  EXHIBIT T. However, the status conference was not held.  The clerk referenced was not in.  Judge Chernoff was not available.  EXHIBIT U.

After more than twenty-eight (28) months of delay from the date of filing, May 9, 2003, Judge Chernoff finally conducted a hearing on the merits of the Petitioner's Petition for Writ of Habeas Corpus on September 29, 2005.   The delay in granting a hearing until such a late date

has substantially and irreparably prejudiced Mr. Goetzendanner.  His petition challenges the legality of his sentence.  The hearing should have been held two (2) years ago.  Mr. Goetzendanner is two (2) years behind in terms of seeking appellate relief should a decision be unfavorable.

This inordinate delay demonstrates that the state remedies provided Mr. Goetzendanner have been futile and have significantly deprived him relief.  The sentence Mr. Goetzendanner is serving is an unlawful on and after sentence.  His incarceration is illegal and he is entitled to immediate release.  Despite the fact that Mr. Goetzendanner filed his state petition for relief twenty-eight (28) months ago, the state courts repeatedly delayed hearing on the mater.  Each day of incarceration is a further deprivation of Mr. Goetzendanner's liberty. Mr. Goetzendanner's case has been delayed by no fault of his own.  His liberty and freedom from unlawful incarceration is at stake; therefore, federal intervention, due to inordinate delay is required.

<u>**ARGUMENT**</u>

I.    **MR. GOETZENDANNER'S PETITION FOR FEDERAL HABEAS CORPUS RELIEF IS PROPERLY BEFORE THE COURT AND MUST BE CONSIDERED AND DECIDE THE MERITS OF HIS PETITION.**

  A.    MR. GOETZENDANNER'S PETITION FOR FEDERAL HABEAS CORPUS RELIEF HAS BEEN PROPERLY FILED WITHIN ANY APPLICABLE STATUTE OF LIMITATIONS PERIOD.

Mr. Goetzendanner's petition for federal habeas review is timely filed well within the applicable statute of limitations.  See 28 U.S.C. § 2244(d).  The one (1) year statute of limitations applicable to a state prisoner bringing a federal petition for habeas corpus relief, such as Mr. Goetzendanner, begins to run from the date on which the factual predicate of the claim could

have been discovered through the exercise of due diligence.  28 U.S.C. §2244(d)(1)(D).

Under §2244(d)(1)(D), the filing deadline begins to run when a petitioner knew or should have known of the facts upon which a challenge could be raised.  See Candelaria v. United States, 247 F. Supp. 2d 125, 129 (D. R.I. 2003).  The salient "facts" which trigger the running of the statute of limitations are evidentiary facts or events and not the legal consequences of the evidentiary facts.  Id at 130.  The one (1) year period is tolled for such time as a properly filed application for state post conviction relief or other collateral review with respect to the pertinent judgment is pending.  Donovan v. State of Maine, 276 F.3d 87, 89 (1st Cir. 2002); Duncan v. Walker, 533 U.S. 167 (2001);  28 U.S.C. §2244(d)(2).

In Mr. Goetzendanner's case, the "fact" that triggered the running of the applicable statue of limitations is the August 26, 2002, discovery of the discharge certificate from the parole sentence.  This document shows that although not served with a parole warrant prior to sentencing, Mr. Goetzendanner was nevertheless compelled to serve, and did in fact serve, his parole sentence followed by the intervening sentence in violation of law.

On June 3, 2003, Mr. Goetzendanner's state petition for habeas relief as a collateral means of addressing the illegality of his sentence was docketed in Norfolk Superior Court.  This filing occurred within the one (1) year limitation period and effectively tolled the running of the statute.  See Donovan, 276 F.3d at 89; 28 U.S.C. §2244(d)(2). Due to inordinate delay not attributable to Mr. Goetzendanner, the matter remains in the state court. Mr. Goetzendanner's federal petition is timely filed and presented well within the one (1) year limitations period. Therefore, the merits of this petition must addressed.

B.    EVEN IF THIS COURT WERE TO CONCLUDE THAT MR.
GOETZENDANNER'S PETITION FOR FEDERAL HABEAS RELIEF WAS
NOT FILED WITHIN THE APPLICABLE STATUTE OF LIMITATIONS, IT
IS EXCUSED BY THE PRINCIPLE OF EQUITABLE TOLLING

As explained *supra*, Mr. Goetzendanner's federal petition is timely filed within the one

year statute of limitations as found in 28 U.S.C. §2244(d)(1)(D).  However, assuming *arguendo*

that this court concludes that Mr. Goetzendanner's  action is not timely filed, it is excused by the

principle of equitable tolling.

The one year statute of limitations filing deadline for a federal habeas petition is subject

to equitable tolling.  Never son v. Farquharson, 366 F.3d 32, 41 (1st Cir. 2004). The doctrine of

equitable tolling provides that in proper circumstances a statute of limitations may be extended

for equitable reasons.  Id. at  39-40.  Equitable tolling is normally appropriate when

circumstances beyond the petitioner's control have prevented him from filing within the

applicable filing deadline.  Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001). Equitable tolling

may be granted if the petitioner was misled or prevented from asserting his rights. Id.

A party seeking to invoke the doctrine of equitable tolling bears the burden of persuading

the court of its applicability to the facts of the instant case.  Donovan v. State of Maine, 276 F.3d

87, 92 (1st Cir. 2002). A petitioner who arduously pursues his claims may receive the benefit of

equitable tolling. Matesanz, 264 at 15.  Equitable tolling will not excuse an petitioner's failure to

exercise due diligence in presenting his claim.  Farquharson, 366 F.3d at 42.

In Goetzendanner's case, the factual predicated to this instant claim; that he is serving his

intervening sentence subsequent to his parole sentence;  was not known to him until August 26,

2002, when the discharge record was made available to him through counsel after repeated

requests to the Massachusetts Department of Correction.   When sentenced, Mr. Goetzendanner

had no reason to believe that the Department of Corrections would impose his sentence in a manner inconsistent with settled state and regulatory law. In fact, on October 11, 2001, the written order of Jude Velis of Berkshire Superior Court advised Mr. Goetzendanner he, "[would] not commence serving his parole violation sentence until the expiration of the concurrent sentences he is presently serving." EXHIBIT D, pg 7.

Mr. Goetzendanner simply had no reason to know that he was being held illegally, having served the parole sentence prior to the concurrent sentence. However subsequent to the October 11, 2001, findings of Judge Velis, Mr. Goetzendanner came to realize that pre-parole eligibility programs were not being offered to him. He began to suspect that despite Judge Velis' assurance to the contrary, his sentences were not imposed properly. After months of diligent pursuit of his prison records, on August 26, 2002, it was discovered that he had served the parole sentence first. When the illegality was discovered, Mr. Goetzendanner, through counsel, promptly sought relief. Therefore, consistent with equitable tolling principles, Mr. Goetzendanner's petition is properly before the court and must be decided on the merits.

C.    MR. GOETZENDANNER'S EFFORTS TO REDRESS HIS ILLEGAL INCARCERATION IN STATE COURT HAVE BEEN FUTILE, STYMIED BY INORDINATE DELAY; THEREFORE, FEDERAL REVIEW IS REQUIRED

Ordinarily, a state prisoner cannot challenge his conviction and incarceration without first exhausting state remedies. Wells v. Marshall, 885 F. Supp. 314, 316 (D. Mass. 1995). However, when a state places obstacles precluding a petitioner from effectively seeking remedies from unconstitutional restraint, the federal court has not choice but to grant relief. Bartone v. United States, 375 U.S. 52, 53 (1963). A petitioner rightfully presents his case in federal court if the state courts have inordinately delayed his matter to the petitioner's prejudice. Marshall, 885 F. Supp. at 317.

As discussed *supra*, Mr. Goetzendanner's  efforts in state court to seek relief from his illegal incarceration have been inordinately delayed by the state court for twenty-eight (28) months.  Court hearings were scheduled and not held.  Judges and clerks were unavailable.  All the while, Mr. Goetzendanner has remained in custody while his liberty is deprived.  Each day that passes is prejudice to Mr. Goetzendanner.

## II.    UPON CONSIDERATION OF THE MERITS OF MR. GOETZENDANNER'S PETITION, THE COURT WILL FIND THAT HE IS UNLAWFULLY INCARCERATED IN VIOLATION OF FEDERAL CONSTITUTIONAL LAW

### A.    MR. GOETZENDANNER IS INCARCERATED WITHOUT DUE PROCESS OF LAW BECAUSE THE COMMONWEALTH OF MASSACHUSETTS IS DEPRIVING HIM OF HIS LIBERTY IN VIOLATION OF ITS OWN STATUTORY, REGULATORY, AND DECISIONAL LAW

Mr. Goetzendanner is presently incarcerated by the Commonwealth of Massachusetts in violation of the Due Process Clause of the Fourteenth Amendment by means of an illegal term of imprisonment.  A federal court may issue a writ of habeas corpus where a petitioner is being deprived the protection of his own state's law if such deprivation amounts to a denial of Equal Protection or Due Process of Law under the Fourteenth Amendment to the United States Constitution. Brown v. Maloney, 267 F.3d 36, 44 (1st Cir. 2001).  A state's own violation of its law which deprive its citizens of Equal Protection or Due Process of law under the Fourteenth Amendment is a concern to the federal court.  Barclay v. Florida, 463 U.S. 939, 957-58 (1983). If a state creates a statutory punishment system, a state petitioner has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent delineated by the written system.  See Hicks v. Oklahoma, 447 U.S. 343, 346 (1980). A state's failure to follow its punishment system infringes a petitioner's recognized liberty interest and runs afoul of the Fourteenth Amendment.  See Id.

In Mr. Goetzendanner's case, the Commonwealth of Massachusetts is incarcerating him in violation of its own written statutory, regulatory, and decisional law defining the structure and guidelines for sentencing. Mr. Goetzendanner's sentence and term of imprisonment must be vacated and he must be immediately released, because the Department of Corrections unlawfully implemented the sentence imposed on Mr. Goetzendanner's 1993 conviction.

In Massachusetts, a sentence for a new crime committed while a person is on parole cannot be imposed and implemented from and after the parole sentence unless a parole violation warrant has been served upon the person. Mass. Regs. Code tit. 120, §303.16(2)(b)((2). Because at the time of sentencing on the 1993 convictions Mr. Goetzendanner had been held in lieu of bail, he was not serving time for the original sentence; therefore, the from and after sentence he received at sentencing could not and was not implemented lawfully.

In Massachusetts, if a person is released from incarceration and placed on parole in accordance with a parole permit, the time the parolee spends at liberty is counted towards the underlying sentence. Mass Gen. L. ch. 127, §149. The time continues to count towards the underlying sentence until the term of the sentence expires or until the day after the parole board issues a parole violation warrant based on a determination that probable cause exists to believe that a parolee has violated one or more conditions of parole. Id.; Mass. Regs. Code tit. 120, §303.15. It is at this time, the day after the issuance of a parole violation warrant, that a person's service of the underlying sentence ceases. Id A person, whose parole has been violated and warrant issued thereon, is not deemed to resume serving the underlying sentence until the parole violation warrant is served. Mass. Gen. L. ch. 127, §149.

The process of serving a parole violation warrant is specified in state statutes, regulations, and case law. Id.; Mass. Regs. Code tit. 120, §303.16(2); Watts v. Commissioner of Corrections,

42 Mass. App. Ct. 951 (1997); Kleczka v. Commonwealth, 350 Mass. 74 (1996); Guppy v. Coalter, 1998 WL 670048 (Mass. Super. 1998) *aff'd* Guppy v. Superintendent, Massachusetts Correctional Institution, 55 Mass. App. Ct. 1113 (2002); Commonwealth v. Cinelli, 2001 WL 492316 (Mass. Super. 2001). Any person authorized to serve civil or criminal process may serve a parole warrant. Mass. Regs. Code tit. 120, §303.16 (2)(a). A person is actually served with a parole violation warrant when he is physically detained under authority of the warrant, and the underlying sentence resumes upon service. Mass. Regs. Code tit. 120, §303.16(2). Service of a parole violation warrant is effective forthwith upon arrest and imprisonment of a parolee unless, among other things, the parolee is convicted of crime committed while on parole. Mass. Gen. L. ch. 127, §149. In a situation where the parolee is sentenced for a crime committed while on parole, that sentence is an intervening sentence and a parole violation warrant cannot be served until the intervening sentence is discharged by parole or otherwise. Mass. Regs. Code tit. 120, §303.16(2)(b).

    If a parolee is held in custody in lieu of bail on the new charges committed while on parole, the parole violation warrant cannot be served; the Parole Board is precluded from doing so, unless the parolee posts bail or bail is lifted by the court. Cinelli, 2001 WL at *3-4; Guppy, 1998 WL at *6; Commonwealth v. Stow, 50 Mass. App. Ct. 1116 (2001). Bail is an impediment to the service of a parole violation warrant. Guppy, 1998 WL at *5. When bail is set on new charges, and the parolee fails to make bail, the parole violation warrant is not served, but lodged as a detainer and the parolee's time spent awaiting trial on the new charges is credited towards any sentence received upon conviction of the new charges. Watts, 42 Mass. App. Ct. 951. As a result, the parolee is not serving the original parole violation sentence while being held in lieu of bail on new charges. Id.; Guppy, 1998 WL 670048; Cinelli, 2001 WL 492316.

    When a parole violation warrant issues as a result of new crimes committed while on parole, and the parolee is sentenced on the new charges, the parolee first serves the sentence on the new charges, called the intervening sentence, until disposition and then resumes serving on the original sentence. Mass Gen. Laws. ch. 127, §147; Mass. Regs. Code tit. 120, §303.16

(2)(b); <u>Kleczka</u>, 350 Mass. 74. A person cannot be sentenced to do his time on the new conviction from and after the disposition of the original sentence unless the parole violation warrant has been served **prior** to the imposition of the new sentence. Mass. Regs. Code tit. 120, §303.16(2)(b)(2) (emphasis added). As has been discussed above, a parole violation warrant cannot be served on a parolee held in custody on new charges in lieu of bail. <u>See</u> *supra*. The regulations do not support, and courts do not tolerate, service of a parole violation warrant at the same time as sentencing on new charges, unless the new sentence is simultaneously imposed and effectively expired by reason of a suspended sentence. Mass. Regs. Code tit. 120, §303.16(2)(b)(2); <u>Watts</u>, 42 Mass. App. Ct. at 953.

The commonwealth has unfairly and unlawfully imposed and implemented Mr. Goetzendanner's sentence against state law in violation of the Fourteenth Amendment. At the time that Mr. Goetzendanner was arraigned and indicted on the Berkshire County indictments, Mr. Goetzendanner was on parole from a prior conviction. At his arraignment on the Berkshire County indictments on March 26, 1992, Mr. Goetzendanner was ordered to recognize bail in the amount of five thousand dollars ($5,000.00) cash or surety. See docket sheets attached as EXHIBIT A. Five (5) days later on March 31, 1992, a parole violation warrant issued against Mr. Goetzendanner on the underlying sentence for which he was receiving parole. See parole violation warrant attached as EXHIBIT B. Once the parole violation warrant was issued, Mr. Goetzendanner stopped receiving credit and stopped serving time on the underlying sentence. <u>See</u> Mass Gen. Laws ch. 127, §147. Instead, Mr. Goetzendanner was on "dead time" on the underlying parole sentence, and was receiving time served credits towards the instant indictment. <u>See</u> EXHIBIT A.

Mr. Goetzendanner could not be considered to be serving time on the underlying parole conviction unless and until the parole violation warrant was properly served upon him. <u>See</u> Mass Gen. L. ch. 127, §0147. Since Mr. Goetzendanner was being held in lieu of bail, and was unable to post the bail amount, the parole violation warrant could not be properly served upon him. <u>See</u> <u>Guppy</u>, 1998 WL 670048; <u>Cinelli</u>, 2001 WL 492316. Indeed, law enforcement was aware of this

fact as evidenced by the Effective Date of Return box in the lower right hand corner of the violation warrant.  See EXHIBIT B. Law enforcement first attempted to serve the warrant on the date it was issued, March 31, 1992, five (5) days after Mr. Goetzendanner was arraigned and ordered held in lieu of bail.  However, the warrant was not served on that date, revealed by the line striking the typed entry, because the authorities knew that once Mr. Goetzendanner was held on bail, he could not be served with the warrant until bail was posted or lifted by the court.  See Id; Watts, 42 Mass. App. Ct. 951; EXHIBIT B. Mr. Goetzendanner never posted bail on the above-entitled indictments, and upon conviction, was credit with three hundred twenty (320) days of time served on the instant sentence.  See EXHIBIT A.   Because Mr. Goetzendanner never posted bail, the earliest date the warrant could have been properly served was that date that the sentence imposed on the above-entitled indictments reached disposition by parole or otherwise.  See Mass Gen. L. ch. 127, §149; Watts, 42 Mass. App. Ct. 951. And unlike the Defendant in Watts, Mr. Goetzendanner did not receive a suspended sentence, so that service of the parole violation warrant on the same day as sentencing was not lawful.  See Id.

        Although according to Massachusetts law a parolee cannot be made to serve a sentence received for convictions while on parole from and after an original parole violation sentence unless the parole warrant is served prior to the imposition of the new sentence, the Department of Corrections failed to comply with the law with respect to Mr. Goetzendanner in this case  See Mass. Regs. Code tit. 120, §303.16(2)(b)(2); Kleczka, 350 Mass. 74. At sentencing on the instant indictments, Mr. Goetzendanner was sentenced to do his time on the current conviction–twenty to thirty (20-30) years–"from and after the expiration of all previous sentences which you have been ordered to serve." Tr. V, pg 95 attached as EXHIBIT C.  However, at the time of sentencing, the parole violation warrant had not been served.  It could not have been served, because Mr. Goetzendanner was being held in lieu of bail.  See Guppy, 1998 WL 670048; Cinelli, 2001 WL 492316.  At the time of sentencing, Mr. Goetzendanner was not serving on the underlying parole sentence; therefore, his current sentence could not run from and after the parole sentence in accordance with the regulations.  See Mass. Regs. Code. tit 120, §303.16

(2)(b)(2). Stephanie Weimer a special state police officer assigned to MCI Cedar Junction who served the warrant, could not have served the warrant any time prior to sentencing because 1) the law prohibited her from doing so and 2) she was not physically in contact with Mr. Goetzendanner's paper work prior to sentencing.  Judge Velis of the Berkshire County Superior Court recognized this fact when ruling on Mr. Goetzendanner's motion for new trial.  On page seven of his decision he wrote, "At that time [of sentencing on the instant indictments] the defendant [Mr. Goetzendanner] was not serving any other sentences, and the concurrent sentences began to run...The defendant [Mr. Goetzendanner], therefore, will not commence serving his parole violation sentence until the expiration of the concurrent sentences he is presently serving."  See Memorandum of Decision and Order attached as EXHIBIT D, pg. 7.

Despite the above, the Department of Corrections treated Mr. Goetzendanner's sentence as a true from and after sentence and upon return to Walpole **after** sentencing, "served" the parole violation warrant on Mr. Goetzendanner and forced him to first do his underlying parole violation time.  This conduct is a violation of state statutory, regulatory, and decisional law and is tantamount to a violation of the Due Process clause of the Fourteenth Amendment.  See Barclay, 463 U.S. at 957-58. Mr. Goetzendanner, as all citizens, has a recognized and protected liberty interest in relying upon the state to punish him in accordance with written sentence structures.  See Hicks, 447 U.S. at 346.  Arbitrary, unlawful deviation from statutory and regulatory sentencing guidelines is a violation of Federal Due Process.  See Id. Mr. Goetzendanner is presently incarcerated in violation of the Due Process Clause of the Fourteenth Amendment; therefore, the Petition for Writ of Habeas Corpus must be allowed and the Petitioner be ordered released from custody.

B.  MR. GOETZENDANNER'S PRESENT INCARCERATION VIOLATES THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT BECAUSE THE SENTENCING JUDGE RELIED ON MATERIALLY FALSE INFORMATION AT THE TIME OF SENTENCING.

Mr. Goetzendanner presently sits in custody as the result of the department of corrections structuring his sentence in violation of the law. See Mass Gen. L. ch 127, §149; Mass. Regs. Code. tit. 120, §303.16(2)(b)(2).  Also, the sentencing judge, in issuing the from and after sentence, did so while relying on materially incorrect assumptions forming the foundation for the imposition of the sentence.  See Commonwealth v. LeBlanc, 370 Mass. 217, 221 (1976); Townsend v. Burke, 334 U.S. 736, 740-41 (1948). Both wrongs result in a deprivation of Mr. Goetzendanner's right to receive Due Process of law as guaranteed by the constitution of this commonwealth and our country. U.S. Const. Amend. XIV; Mass Dec Rights. Art. XII.  Because there is no alternative remedy that will correct this violation, Mr. Goetzendanner is entitled to immediate release.

It is an established principle of Due Process that a defendant be assured that accurate and reliable information is presented to the court and that a judgment is imposed based upon materially true statements and accurate information.  United States v. Alves, 688 F. Supp. 70, 79 (D. Mass 1988). It is a violation of Due Process to impose a sentence on a defendant that is the result of the prosecution submitting misinformation at sentencing or the court prejudices the petitioner by misreading his records. Townsend v. Burke, 334 U.S. 736, 740-41 (1948); Commonwealth v. LeBlanc, 370 Mass. 217, 221 (1976). A petitioner is entitled to immediate release by grant of his petition for habeas corpus if he receives a constitutionally invalid sentence that is carelessly or by design based on a materially false foundation.  Burke, 334 U.S. at 740-41. Trial counsel is under a duty to prevent the court from imposing a sentence based on false assumptions.  Id.

There was a deafening silence, due to a quiet conspiracy among and between Mr. Goetzendanner's parole officer, the  probation department, the sheriff's department, and the district attorney's office,  in not bringing to the court's attention at sentencing that since Mr. Goetzendanner was not at the time of sentencing held on his parole violation warrant, a sentence commanding him to do his intervening sentence from and after the parole violation sentence violated the laws of the commonwealth.  This quiet conspiracy is shown in Mr. Goetzendanner's parole running records noting meetings between Mr. Goetzendanner's parole officer and the above stated departments.  See EXHIBIT F, entries beginning at 3/10/1992.  The running record reveals that there was a meeting between Mr. Goetzendanner's Parole Officer and the Deputy Superintendent regarding bringing Mr. Goetzendanner into court to withdraw bail so that the parole violation warrant could be served.  EXHIBIT F, entry 10/30/1992. The next entry, 11/03/1992 reveals that Mr. Goetzendanner was not brought into court, his bail not withdrawn, and the status quo, five thousand dollar ($5,000.00) cash bail remained.  Shortly thereafter, on January 8, 1993 a meeting was held between Mr. Goetzendanner's Parole Officer and the DA for the commonwealth to discuss Mr. Goetzendanner's case.  It is not difficult  to infer that at that meeting the issue of withdrawing Mr. Goetzendanner's bail to release him to the parole violation warrant was discussed as well as the proper procedures for doing so.

At sentencing, when the judge stated that the sentence was to be served from and after, the district attorney failed to enlighten the court that because Mr. Goetzendanner had been held on bail, he could not and was not served with the parole violation warrant prior to sentencing so that he must, as matter of law, do his intervening sentence before the parole violation sentence. See Watts, 42 Mass. App. Ct. 951; Guppy, 1998 WL 670048; Cinelli, 3001 WL 492316. The commonwealth had knowledge long before conviction or sentencing that Mr. Goetzendanner was not serving time on the parole violation, yet failed to inform the judge during sentencing. The commonwealth's conduct of intentional silence on the matter was the equivalent of providing misinformation forming the foundation for the judge's sentence.

Apart from the commonwealth's conduct, the court in sentencing Mr. Goetzendanner

implicitly based its sentence on the assumption that Mr. Goetzendanner. was at the time of sentencing being held on the parole violation warrant. This assumption was incorrect, regardless of where the fault of the incorrect assumption lies. The foundational assumption was critically material to the sentence imposed. The inaccuracy resulted in the present situation. See Burke, 334 U.S. at 740-41.

Also, Mr. Goetzendanner's trial counsel did not uphold his duty in preventing the court from imposing the sentence based upon the court's incorrect assumptions. See Id. As opposed to immediately alerting the court that Mr. Goetzendanner was not then serving the parole violation sentence, trial counsel called to the court's attention that Mr. Goetzendanner was facing five years on the parole violation sentence but did not explain more for the edification of the court. Trial counsel's inattention allowed the judge to impose the "from and after" sentence based on grossly incorrect assumptions. Because of the forgoing, Mr. Goetzendanner's sentence was issued in violation of his right to receive Due Process of laws and he must be immediately released to remedy this state and federal constitutional deprivation. See Id; U.S. Const. Amend. XIV; Mass. Dec. Rights Art. XII.

Additionally, Mr. Goetzendanner must be granted immediate release to protect his right to be free from violation of his state and federal constitutional rights to fundamental fairness, to be free from double jeopardy, ex post facto laws, and cruel and unusual punishment as found in Article One Section Ten and the Fifth, Eight, and Fourteenth Amendments to the United States Constitution and Articles Twelve, Twenty-Four, and Twenty-Six of the Massachusetts Declaration of Rights. Concerns for principles of double jeopardy mandate that Mr. Goetzendanner never be required again serve the parole violation sentence he was discharged from. U.S. Const. Amends. V, XIV. It would also constitutes cruel and unusual punishment to subject Mr. Goetzendanner to this unconscionable sentence structure. U.S. Const. Amends. VIII, XIV; Mass. Dec. Rights Art. XXVI. Furthermore, the sentence has been structured in such a way enlarging the term of punishment unlawfully in violation of freedom from ex post facto punishment. U.S. Const. Art 1, §10; Mass. Dec. of Rights. Art. XXIV. Therefore, the Petition

for Writ of Habeas Corpus must be allowed and Mr. Goetzendanner ordered to be released from custody.

## CONCLUSION

For the forgoing reasons, the Defendant requests that this petition for habeas corpus be allowed.

By his Attorney,


___/s/ Joseph F. Krowski, Esquire_____
JOSEPH F. KROWSKI, ESQUIRE
LAW OFFICES OF JOSEPH F. KROWSKI
30 Cottage Street
Brockton, MA 02301
(508) 587-3701
BBO #: 280540

Date: October 3, 2005
m:cri\goetz.federal.habe


### CERTIFICATE OF SERVICE

I, Joseph F. Krowski, Esquire, hereby certify that I have this 3rd day of October, 2005, served a copy of the Memorandum of Law in Support of Petitioner's Petition for Federal Habeas Corpus Relief and Opposition to Respondent's Motion to Dismiss on Maura D. McLaughlin, AAG, Attorney General's Office, One Ashburton Place, Boston, MA 02108 by first class mail postage prepaid.


_____/s/ Joseph F. Krowski, Esquire_____
JOSEPH F. KROWSKI, ESQUIRE

EXHIBIT A


BERKSHIRE COUNTY SUPERIOR COURT
DOCKET SHEETS
(18 PAGES)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT B


PAROLE VIOLATION WARRANT
(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT C

SENTENCING TRANSCRIPT
(13 PAGES)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT D


JUDGE VELIS OCTOBER 9, 2001, MEMORANDUM OF DECISION AND
ORDER ON DEFENDANT'S MOTION FOR A NEW TRIAL

(8 PAGES)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT E

CERTIFICATE OF DISCHARGE

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT F

PAROLE RUNNING RECORDS

(28 PAGES)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT G

JUDGE CRATSLEY ORDER

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT H


NORFOLK COUNTY SUPERIOR COURT, NOCV2003-01010
DOCKET SHEETS

(6 PAGES)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT I


NORFOLK COUNTY SUPERIOR COURT, NOCV2003-01010
JUNE 1, 2004, CLERK'S NOTICE

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT J


HAND DELIVERED CORRESPONDENCE TO NORFOLK COUNTY
SUPERIOR COURT CLERK'S OFFICE

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT K


JUNE 3, 2004, CORRESPONDENCE TO
THE HONORABLE PAUL A CHERNOFF

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT L


NORFOLK COUNTY SUPERIOR COURT, NOCV2003-01010
JUNE 25, 2004, CLERK'S NOTICE

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT M

AUGUST 31, 2004, CORRESPONDENCE TO
NORFOLK COUNTY SUPERIOR COURT

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT N

OCTOBER 21, 2004, CORRESPONDENCE TO
NORFOLK COUNTY SUPERIOR COURT

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT O

NORFOLK COUNTY SUPERIOR COURT, NOCV2003-01010
NOVEMBER 2, 2004, CLERK'S NOTICE

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT P

NORFOLK COUNTY SUPERIOR COURT, NOCV2003-01010
DECEMBER 3, 2004, CLERK'S NOTICE

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT Q

DECEMBER 6, 2004, CORRESPONDENCE TO
THE HONORABLE PAUL A. CHERNOFF

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT R

DECEMBER 13, 2004, CORRESPONDENCE TO
NORFOLK COUNTY SUPERIOR COURT

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT S

MASS. GEN. L. CH. 211,§3 PETITION TO THE
SINGLE JUSTICE OF THE SUPREME JUDICIAL COURT

(7 PAGES)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT T

NORFOLK COUNTY SUPERIOR COURT, NOCV2003-01010
APRIL 12, 2005, MEMORANDUM OF THE HONORABLE
PAUL A. CHERNOFF

(1 PAGE)

HAND DELIVERED OCTOBER 3, 2005

EXHIBIT U

JULY 11, 2005, STATUS REPORT TO THE SINGLE JUSTICE OF THE
SUPREME JUDICIAL COURT

(3 PAGES)

HAND DELIVERED OCTOBER 3, 2005